Filed 2/28/13  P. v. Goodman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEVEN M. GOODMAN,<br><br>    Defendant and Appellant. | D061713<br><br>(Super. Ct. No. SCE316313) |

APPEAL from a judgment of the Superior Court of San Diego County, Roger W. Krauel, Judge.  Affirmed

A jury convicted Keven M. Goodman of fleeing from police in a motor vehicle, with willful and wanton disregard for safety, in violation of Vehicle Code section 2800.2. (Undesignated statutory references are to the Vehicle Code.)  Goodman later admitted eight prison priors and the prosecution dismissed three other prison priors.  The trial court sentenced him to the upper term of three years, plus five years for five of his priors, with the court striking three of the priors.

Goodman filed a timely notice of appeal asking us to examine the record and determine if there are any issues deserving of further briefing. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We have done so, find none, and hence affirm the judgment.

FACTS

Very early in the morning on November 15, 2011, Deputy Sheriffs Thomas Fletcher and John Greene were driving separate marked patrol cars in an unincorporated area of El Cajon. From about one hundred to two hundred feet away, Fletcher heard the radio of an approaching green Mustang that he later learned was being driven by Goodman. Believing the loud music to constitute a noise violation, he followed the car for about a minute and then effected a traffic stop by turning on his lights. The vehicle stopped immediately. Fletcher had encountered Goodman before, and during the prior contact, Fletcher pulled his gun on Goodman when Goodman reached into a jacket pocket. Fletcher later found that Goodman had a knife concealed in that pocket.

After Goodman admitted to being on parole, Fletcher decided to do a parole search. At some point, Greene arrived at the scene. Believing that Goodman had an unfavorable view of him, Fletcher asked Greene to do the search. As Fletcher stepped back to his patrol car to run a record check on Goodman, Greene stood by the passenger-side door and spoke with Goodman. Greene became nervous and told Goodman to keep his hands on the steering wheel when Goodman reached between the center console of the car and the passenger-side floorboard. Goodman complied, but then reached for his cell phone. Greene again told Goodman to put his hands on the wheel and Goodman complied. Greene motioned for Fletcher to approach. Greene told Fletcher that

2

Goodman made him uncomfortable because Goodman was possibly reaching for something.

Goodman refused Greene's request to put his arms behind his back to be handcuffed. Goodman became argumentative and refused to comply. After about 10 to 15 seconds of back and forth between Greene and Goodman, Fletcher pepper-sprayed the inside of Goodman's car based on Goodman's "verbal noncompliance." After Goodman put his head outside the window, Greene pepper-sprayed Goodman's face. Goodman yelled and then started his car and quickly drove off.

Fletcher and Greene pursued Goodman in their patrol cars with their lights and sirens activated. After pursuing Goodman for about 11 minutes and 26 miles, Fletcher lost sight of Goodman's vehicle on the freeway and discontinued the pursuit. During the pursuit, Fletcher observed around nine traffic violations, including three stop sign violations, red light violations, driving in oncoming traffic, driving over the double yellow line on a divided highway, and driving at speeds in excess of 100 miles per hour. Law enforcement later found Goodman's car in Lakeside, but Goodman could not be found and was not taken into custody on that day.

Goodman testified that he passed two patrol cars as he drove his Mustang. He claimed that the car's radio did not have the capacity to play very loud. After the traffic stop, Goodman claimed that he shielded his eyes from the patrol cars' lights, but that he complied when the second officer asked him to put his hands on the steering wheel. He sat in that position for five minutes.

3

Goodman asked, "What happened?" after one of the deputies suddenly asked him to put his hands behind his back. The deputy repeated the request and explained that he wanted to handcuff Goodman. When Goodman looked to the passenger side, he was pepper-sprayed through that side of the car. He was then pepper-sprayed from the driver side as well. Believing he had been pepper-sprayed for no reason, Goodman became afraid for his life and thought he might be shot.

Goodman denied that he had driven as fast as Fletcher had claimed, noting that his vision was impaired from the pepper spray. He did testify, however, to running several stop signs and going eighty miles per hour on the freeway. On cross-examination, he admitted that he ran two stop signs and sped twice, once on surface streets and once on the freeway, for a total of four violations.

## DISCUSSION

On appeal, Goodman's appointed appellate counsel filed an opening brief pursuant to *Wende*, requesting that we conduct an independent review of the record to determine whether there are any arguable appellate issues. (*Wende*, *supra*, 25 Cal.3d 436.) Under *Anders v. California* (1967) 386 U.S. 738, he listed as possible but not arguable issues, whether (1) the trial court properly instructed the jury that the initial traffic stop was legal, (2) trial counsel was ineffective for not moving for a "wobbler" determination, (3) the trial court erred in imposing the upper term, (4) the trial court erred in excluding photos of Goodman's searched car, and (5) the prosecutor committed misconduct in referring repeatedly to the amount of force used as legal or justified. We granted Goodman permission to file a brief on his own behalf. He has not responded.

4

We have examined the record pursuant to *Wende* and considered the possible issues referred to by appointed counsel. We find no reasonably arguable appellate issue. Competent counsel has represented Goodman on this appeal.

In a subsequently filed petition for writ of habeas corpus (*In re Keven M. Goodman on Habeas Corpus*, D062777), Goodman asserted through the same attorney that filed the *Wende* appeal that he received ineffective assistance of counsel. On December 13, 2012, we issued an order to show cause made returnable before the superior court on the petition for writ of habeas corpus.

DISPOSITION

The judgment is affirmed.

McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

5